423 A.2d 393

**Arlene B. LELAND and Donald C. Leland**

**v.**

**J. T. BAKER CHEMICAL CO., Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 1980.

Filed Dec. 5, 1980.

Petition for Allowance of Appeal Denied May 4, 1981.

574

George J. Lavin, Jr., Philadelphia, for appellant.

Keith S. Erbstein, Philadelphia, for appellees.

Before BROSKY, HOFFMAN and CIRILLO, JJ.*

HOFFMAN, Judge:

Appellant contends that *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978), which barred the use of the words "unreasonably dangerous" in jury instructions in cases involving strict products liability, should not have been applied retroactively. We disagree and, accordingly, affirm the order of the lower court granting a new trial.

* Judge VINCENT A. CIRILLO, of the Court of Common Pleas of Montgomery County, Pennsylvania is sitting by designation.

Appellee Arlene B. Leland was employed as a laboratory technician at a Philadelphia hospital. Her duties included cleaning utensils in reagent grade sulfuric acid manufactured by appellant. On December 11, 1964, appellee obtained two glass bottles of this acid from a store—room. When she returned to her station, Mrs. Leland placed one of the one—gallon bottles onto the counter. While lifting the other, she heard the sound of breaking glass. The next thing she remembered was lying on the floor in a pool of sulfuric acid. Mrs. Leland testified that she did not strike the bottle against the counter top, that she did not see the bottle break, and that she believed that it had broken spontaneously in mid—air.

In December, 1966, appellees instituted this action, asserting, *inter alia*, that appellant was strictly liable under the Restatement (Second) of Torts § 402A (1965).[1] At the trial, which commenced on January 22, 1975,[2] appellees' expert witness opined that the glass bottle was defective and could have broken spontaneously because of internal stresses, improper annealing, or minute scratches on the surface of the glass, each of which might have weakened the bottle. The expert testified also that the product was not packaged safely because there was technology available in 1964 to provide secure packaging for such a potentially lethal product. Thus, appellees asserted alternative theories of defectiveness. After the jury returned a unanimous verdict for appellant, appellees filed a motion for a new trial or judgment n. o. v. The lower court granted the motion for a new trial. This appeal followed.

At the time of trial, Pennsylvania law required that a plaintiff in a products liability case based upon strict liability prove that the "product [was] in a defective condition

1. Appellees also commenced a concurrent action in the United States District Court for the Eastern District of Pennsylvania. That action was dismissed without prejudice ostensibly because the state action was pending and certain defendants could not be joined in the federal action.

2. The record does not reveal the reason for the extreme delay before trial.

*unreasonably dangerous* to the user or consumer . . . ." Restatement (Second) of Torts § 402A (1965) (emphasis added). *See Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adopting section 402A). In the present case, the lower court instructed the jury as follows:

> If you find that an unsafe and improper use of the product was the legal cause of the accident rather than any alleged defective condition, then you must find for the defendant. But, if you find that the product was defective, and that the defect was the legal cause of an unreasonable danger resulting in injury to the plaintiff, then you must find for the plaintiff.

Appellees repeatedly excepted to that charge and based their motion for a new trial upon the ground that the "unreasonably dangerous" language had no place in a jury charge on the issue of strict liability. After appellees' motion was filed but before it was determined, our Supreme Court decided *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975), and *Azzarello v. Black Bros. Co.*, *supra*. In *Berkebile*, the late Chief Justice JONES, joined by Justice NIX, with five Justices concurring in the result, stated "that the 'reasonable man' standard in any form has no place in a strict liability case." *Id.*, 462 Pa. at 96–97, 337 A.2d at 900. Later, a unanimous Court echoed the pronouncement of Chief Justice JONES:

> For the term guarantor to have any meaning in this context the supplier must at least provide a product which is designed to make it safe for the intended use. Under this standard, in this type of case, the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use. It is clear that the term "unreasonably dangerous" has no place in the instructions to a jury as to the question of "defect" in this type of case. We therefore agree with the court en banc that the use of the term "unreasonably dangerous" in the charge was misleading and that the appellee was entitled to a new trial.

*Azzarello v. Black Bros. Co., supra* 480 Pa. at 559–60, 391 A.2d at 1026–1027 (footnotes omitted). When the lower court ultimately granted appellees' motion for a new trial, it based its decision upon *Berkebile* and *Azzarello.*

 Appellant contends that *Azzarello* should not be retroactively applied. We disagree.

It is the settled common law tradition that judicial precedents normally have retroactive as well as prospective effect. That is, what the court holds to be the law for today for the litigants before it, is the law for persons who come into court hereafter, even though the alleged wrong was committed before today's decision, and today's decision declares illegal what appeared to be legal when it was done.

Currier, *Time and Change in Judge–Made Law: Prospective Overruling,* 51 Va.L.Rev. 201, 205–06 & n.8 (1965) (footnote omitted).[3] Accordingly, our cases have held, in a variety of contexts, that an intervening change in the law must be applied to cases which are in the throes of direct appeal when the change occurred.[4] *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1965), was tried under Georgia law which required a guest to prove gross negligence before recovering damages from his host. Because Pennsylvania had no guest statute, plaintiffs would have recovered if Pennsylvania law were applied. After losing at trial, plaintiffs appealed, claiming that an intervening change of Pennsylvania conflict of laws theory dictated that Pennsylvania, and not Georgia law, should have governed the case. Our Supreme Court stated:

3. *Accord,* Note, *The Retroactivity of Minnesota Supreme Court Personal Injury Decisions,* 6 Wm. Mitchell L.Rev. 179, 182–88 (1980). *See generally,* Annot., 111 A.L.R. 1317, 1342–45 (1937).

4. In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1975), the Supreme Court of the United States observed the distinction between cases which are on direct appeal and those subject to collateral attack. When a case is on direct review, the change in the law will be given effect. *Id.* at 627, 85 S.Ct. at 1736. When, however, the judgment is collaterally attacked on the basis of the subsequent decision, there is no settled rule of retroactive application. *Id.*

While there are no cases in Pennsylvania dealing with the effect of a change in decisional law pending appeal, there is authority in a closely related field. Unless vested rights are affected, a court's interpretation of a statute is considered to have been the law from its enactment date, despite contrary intervening holdings. *Buradus v. General Cement Prods. Co.*, 159 Pa.Super. 501, 48 A.2d 883 (1946), aff'd 356 Pa. 349, 52 A.2d 205 (1947). In such circumstances, the latest interpretation is applicable to a case whose appeal has not yet been decided.

Moreover, there are occasions when a party is given the benefit of a change in the law in order to prevent an injustice, especially when, as here, the other party could not have changed his position in reliance on the initial decision. Thus in *Reamer's Estate*, 331 Pa. 117, 200 A. 35 (1938), we were willing to correct a decision in a previous appeal of the same case which had been made palpably erroneous by an intervening decision despite the law of the case doctrine. Recently in *Brubaker v. Reading Eagle Co.*, 422 Pa. 63, 221 A.2d 190 (1966), we ordered a new trial to permit the plaintiff to bring his allegations within the actual malice requirement of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710 [, 11 L.Ed.2d 686] (1964). Although in *Brubaker*, the plaintiff was deprived of his original verdict by the change in law, and it thus is the converse of the present problem, it is illustrative of our goal of assuring each litigant a fair adjudication on the merits.

422 Pa. at 625–26, 222 A.2d at 900–901 (footnotes omitted). Thus, the Court held that it was not unfair to grant a new trial based upon the intervening decision even though the plaintiffs had failed to object at the time of trial.[5] Similarly, in *In re Estate of Riley*, 459 Pa. 428, 430, 329 A.2d 511, 512–513 (1974), the Court affirmed an order which granted reconsideration and reargument of an auditor's proposed distribution because another jurisdiction had construed a statute similar to that of Pennsylvania in the interim. In

---

5. *See also Azzarello v. Black Bros. Co., supra,* 480 Pa. at 552, 391 A.2d at 1023.

*Commonwealth v. Lee*, 470 Pa. 401, 404–405, 368 A.2d 690, 692 (1977), the Court stated:

> We recognize that various inequities arise in all three standards [which determine the effective date of a decision] when one litigant benefits from a decision and another, seemingly similarly situated, is denied the same benefit. We are of the opinion that the *Little–Linkletter* finality approach, which was first announced in *United States v. Schooner Peggy*, 1 Cranch 103, [5 U.S. 103], 2 L.Ed. 49 (1801), should remain as the standard for issues of applicability in this Commonwealth.[6]

Thus, we hold that the lower court correctly applied *Azzarello* retroactively.[7]

**6.** In *United States v. Schooner Peggy*, 1 Cranch (5 U.S.) 103, 110, 2 L.Ed. 49, 51 (1801), Chief Justice MARSHALL stated:

> It is, in the general, true that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervened and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, and of that no doubt, in the present case, has been expressed, I know of no court which can contest its obligation.... In such a case, the court must decide according to existing laws, and if it be necessary to set aside ·a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside.

**7.** There are many sound reasons for applying judicial pronouncements retroactively. As one writer has stated:

> On the basis of public policy and fairness, retroactive overruling is the most equitable approach in the area of tort law. The arguments supporting this view are clear and numerous. First, it is not necessary to use the prophylactic doctrine of prospective overruling in the tort area since reliance is generally not a viable argument. Second, by applying the new law to the case before the court, the policy of providing incentive for challenging outmoded legal doctrines is served. Third, the fear that the new rule becomes pure dicta if it is not applied to the case before the court is eliminated. Finally, applying the new rule to cases still in the judicial process promotes the interests of fairness and judicial administration. By accepting review of cases that reach the court after a change in the law, the court avoids the cumbersome task of deciding cases under the old law after the rejection of that law. Because of the delays in legal process, discredited rules of law live on for many years under prospective overruling.

Note, *supra*, 6 Wm. Mitchell L.Rev. at 196–97 (footnotes omitted).

Appellant also argues, citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), that because substantial inequitable results would obtain, retroactive application should be denied.[8] We disagree. The inordinate and unexplained delay of the trial court in disposing of appellees' motion was equally prejudicial to both parties. Moreover, appellant, as a supplier of products, cannot seriously contend that it detrimentally relied upon the prior rule because: (1) parties do not alter their tortious conduct to conform to the most recent judicial pronouncements; (2) strict liability per the Restatement is not dependent upon the conduct of the defendant, but rather the condition of the product; and (3) under the facts of this case, the accident occurred before the adoption of section 402A in Pennsylvania.[9] Finally, it is not inequitable to deprive appellant of a unanimous verdict which follows from a misleading instruction. Our Supreme Court has cogently stated that the supplier's duty to provide safe products is not determined by any standard of reasonableness. Were we to deny retroactive application, we would be ignoring the very policies that underlie the doctrine of strict liability, and creating one more arbitrary limitation upon a plaintiff's right of recovery. Thus, we hold that *Chevron Oil* has not been satisfied, *see Schreiber v. Republic Intermodal Corp.,*

**8.** Assuming, *arguendo*, that *Chevron Oil* properly applies to common law actions in tort, appellant misconstrues its effect. Appellant suggests that *Chevron Oil* sets forth a tripartite test which must be met before a decision may be retroactively applied. On the contrary, we read *Chevron Oil* to require retroactive application unless each of the enumerated criteria are present. 404 U.S. at 105–09, 92 S.Ct. at 354–56. *See Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977). Under *Chevron Oil*, the three elements which must appear before the decision will be denied retroactive application are: (1) whether the decision establishes a new principle of law which was not clearly foreshadowed; (2) whether, considering the history and policies underlying the rule, retroactive application will further or retard its operation; and (3) whether retroactive application would produce substantial inequitable results. 404 U.S. at 106–07, 92 S.Ct. at 355.

**9.** Interestingly, appellant does not argue that *Webb v. Zern, supra,* should not be retroactively applied.

*supra* 473 Pa. at 622, 375 A.2d at 1289, and that *Azzarello* should be retroactively applied.[10]

Order affirmed.

**10.** Appellant raises three additional issues which lack merit.

Appellant contends that appellees are not entitled to a new trial because the four year delay in disposing of appellees' motion for a new trial is presumptively prejudicial to it. Although appellant strenuously argues that justice should not be delayed, the case upon which it principally relies states that "a lapse of time is presumptively prejudicial to *all parties*," not only the party opposing a motion for a new trial. *Shrum v. Pennsylvania Electric Co.,* 440 Pa. 383, 386, 269 A.2d 502, 504 (1970) (emphasis added). In *Shrum,* disposition of plaintiff's motion for a new trial was delayed for seven years because, *inter alia,* the plaintiff failed to obtain a transcript of the trial proceedings. Thus, *Shrum* does not apply to this case because the delay cannot be traced to the laches of the moving party. We also note that an appellate court's "unhappiness ... with ... delay is not ... a sufficient ground for ordering a new trial ...." *Exton Drive-In Inc. v. Home Indemnity Co.,* 436 Pa. 480, 486, 261 A.2d 319, 323 (1969). Likewise, we believe that our unhappiness with the delay is not a sufficient reason to reverse an order granting a new trial.

Appellant next contends that the jury was properly charged under *Azzarello.* Because the jury was charged in terms of "unreasonable danger," and because *Azzarello* holds that it is reversible error to use negligence terms in a strict liability instruction, this contention is meritless.

Appellant finally contends that *Azzarello* should not be applied to a case involving conscious design choices. We decline to so limit *Azzarello.* The Supreme Court did not expressly limit its holding to cases involving manufacturing and/or design defects. Indeed, were we to adopt the rule urged by appellant, we would only compound the confusion created by the "unreasonably dangerous" standard in cases such as this which involve both manufacturing defects and conscious design defects.