The Board of Education of the School District of Philadelphia, Appellant *v.* International Brotherhood of Firemen and Oilers, Local 1201, AFL-CIO, Appellee.

Argued December 14, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and DOYLE.

*Vincent J. Salandria*, Assistant General Counsel, with him, *Eugene F. Brazil*, General Counsel, for appellant.

*Michael Brodie*, with him, *Mark P. Muller*, *Freedman and Lorry, P.C.*, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 1, 1983:

The Philadelphia County Common Pleas Court, by order, affirmed a grievance arbitration award favorable to the International Brotherhood of Firemen and Oilers, Local 1201, AFL-CIO (Union).[1] The Board of Education of the School District of Philadelphia (District) appeals. We vacate and remand.

Following a three-day strike in February of 1981, the Union and the District entered into a collective bargaining agreement (Agreement) for the period from September 1, 1980 to August 31, 1982. This Agreement provided, *inter alia*, for: (1) no wage increase from September 1, 1980 to August 31, 1981; (2)

---

[1] The Union is the certified bargaining representative for that unit of School District employees consisting of custodial employees, building maintenance employees, warehouse employees, transportation employees, printing and duplicating employees, food service support employees, audio-visual aid employees, orthopedic aides, piano tuners, field operation employees and building construction inspectors.

a four percent lump sum bonus payable by September 1, 1981; (3) an additional ten percent wage increase effective September 1, 1981; and (4) increased contributions by the District to the Union's hospitalization, health and welfare, and legal services funds.

Since its proposed budget for the 1981-1982 school year did not receive full funding approval from the Philadelphia City Council, on May 29, 1981, the District adopted a revised budget reflecting a $60 million funding deficit. In order to balance its budget as required by law,[2] the District negated certain benefit commitments made to the Union, including the ten percent wage increase and the additional contributions to the Union's medical and legal funds. As a result, the District realized a saving (and the Union members a corresponding loss) of approximately $7.3 million.[3]

The Union, alleging that the District had violated the Agreement, filed a grievance. The District argued that, since City Council had failed to appropriate the entire amount requested for its originally-proposed budget, full satisfaction of its contractual promises was legally impossible. The arbitrator, although rec-

---

[2] The Educational Supplement to the Philadelphia Home Rule Charter, 351 Pa. Code §12.12-303(a), requires the School District to operate within a balanced budget. *See* The First Class City Public Education Home Rule Act, Act of August 9, 1963, P.L. 643, *as amended*, 53 P.S. §13201.

[3] Additional savings were effected by the denial of salary and benefit increases to employees in other bargaining units, by the reduction or elimination of certain programs and by layoffs. These actions taken by the School District have provided a constant source of litigation. *See, e.g., Philadelphia Federation of Teachers, Local No. 3 v. Thomas,* 62 Pa. Commonwealth Ct. 286, 436 A.2d 1228 (1981) ; *Philadelphia Association of School Administrators v. School District of Philadelphia,* American Arbitration Award Case No. 14-39-1301-81 M/Q (April 23, 1982) ; and *School District of Philadelphia v. International School Security Officers Association and Plant Security Officers Association,* American Arbitration Award Case No. 14-39-0249-82 Q (September 24, 1982).

ognizing that proven impossibility of performance may excuse a party from meeting its negotiated commitments, found that the District had failed to demonstrate that its obligations to the Union could not be met out of existing revenues. Accordingly, the arbitrator upheld the Union's grievance and ordered that, "unless and until such proof [of impossibility of performance] is presented and/or the District bargains with the Union for the elimination, modification or deferral of the contractual commitments [such commitments] must be met by the School District." The common pleas court affirmed, and this appeal followed.

Initially, we note that, our review of an arbitrator's decision being highly circumscribed, an award will not be overturned if it draws its essence from the collective bargaining agreement. *Greater Johnstown Area Vocational-Technical School v. Greater Johnstown Area Vocational-Technical Education Association*, 69 Pa. Commonwealth Ct. 208, 211, 450 A.2d 787, 789 (1982). As stated by our Supreme Court in *Leechburg Area School District v. Dale*, 492 Pa. 515, 520-21, 424 A.2d 1309, 1312-13 (1981):

> The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

Thus, if the arbitrator's award "can in any way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . ," it will be respected by the judiciary. *Community College of Beaver County v. Community College of Beaver County, Society of the Factulty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d

1267, 1275 (1977) (quoting *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3rd Cir. 1969)).

The subject matter of this dispute (*i.e.,* the District's refusal to honor the duly-negotiated wage and benefit increases) is clearly encompassed within the terms of the Agreement, which specifically provides for such increases. The District, however, contends that the arbitrator exceeded the scope of his authority and that, consequently, the award does not draw its essence from the Agreement. Citing Article IV, §2(i) of the Agreement,[4] the District argues that the arbitrator's award conflicts with the Court's decision in *Philadelphia Federation of Teachers v. Thomas,* 62 Pa. Commonwealth Ct. 286, 436 A.2d 1228 (1981) (hereinafter *Philadelphia Teachers Case*).[5] In the *Philadelphia Teachers Case,*[6] we held that each year of a collective bargaining agreement negotiated under the

---

[4] This provision provides that:

[T]he arbitrator shall be without power or authority to make any decision

    (i) *Contrary to, or inconsistent with, or which modifies or varies in any way,* the terms of this agreement or of *applicable law* or rules and regulations having the force and effect of law . . . . (Emphasis added.)

[5] We note that, although decided approximately two weeks after the arbitrator's decision, the *Philadelphia Teachers Case* applies. Generally, judicial decisions have retroactive, as well as prospective, effect. *Leland v. J. T. Baker Chemical Co.,* 282 Pa. Superior Ct. 573, 423 A.2d 393 (1980).

[6] In the *Philadelphia Teachers Case,* as here, the District contended that, due to the failure of the legislative authorities to provide the full amount of the requested funding, it was unable to comply with the terms of a previously-negotiated two-year collective bargaining agreement which it had entered into with the teachers' union. In an effort to operate within a balanced budget, the District unilaterally negated certain wage increases and laid off approximately 3,400 teachers in the second year of the pact. Rather than proceed to arbitration, the teachers' union instituted suit in

Public Employe Relations Act[7] (PERA) is "subject to a condition precedent . . . that the funding of the contract by the independent legislative bodies . . . would be forthcoming." *Id.* at 296, 436 A.2d at 1233. If that contingency does not occur, mutual obligations do not arise and reciprocal duties are not created. *Id.* at 297, 436 A.2d at 1233.

The arbitrator was unconvinced, based on the evidence, that the District had insufficient funds to satisfy its contractual obligations to the Union. Since the *District* was seeking to avoid the liabilities of a previously-negotiated pact, the arbitrator imposed on the District the burden of demonstrating, by adequate proof, exculpatory *impossibility of performance.* Based on our holding in the *Philadelphia Teachers Case,* however, we conclude that, in fact, the *Union* is required to establish *occurrence of a condition precedent,*[8] rather than the District being compelled to demonstrate impossibility of performance.[9] Since the bur-

common pleas court seeking specific enforcement of the collective bargaining agreement. After the lower court denied the union's request, the teachers engaged in a labor strike in September, 1981. Subsequently, the District filed suit in common pleas court to enjoin the strike and an injunction was issued. The lower court ordered the teachers to return to work. Both cases were appealed to this Court and were consolidated for argument and disposition.

[7] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.101.

[8] If a condition precedent does not occur, the right to enforce the contract does not come into existence. *Williston on Contracts,* §663 (3rd ed.). Generally, the party seeking to enforce a contract bears the burden of proving the occurrence of all conditions precedent. *See Williston on Contracts,* §674 (3rd ed.).

[9] Whereas the failure of a condition precedent to occur prevents a duty of performance from arising, a successful claim of impossibility of performance *excuses* performance *after the duty to perform arises.* John D. Calamari and Joseph M. Perillo, *Handbook of the Law of Contracts,* §13-1 (1977). Stated otherwise, a defense of impossibility of performance *terminates* previously-established legal obligations.

den of proof was imposed on the wrong party and since, in any event, an incorrect element to be established (to wit, impossibility of performance) was set forth by the arbitrator, we are compelled to conclude that the arbitrator's decision is inconsistent with the law and, consequently, that the award does not draw its essence from the Agreement[10].

We are, however, particularly sensitive to the Union's dilemma. Although the public employee unions who contract with the School District knowingly incur certain risks,[11] they should not be made to suffer unfairly and without due consideration if the anticipated funding for their respective bargaining agreements is not forthcoming. The integrity of the negotiated commitments must be maintained if possible. The Union, then, must be given the opportunity to establish the occurrence of the condition precedent

---

[10] Although the arbitrator was without the benefit of our decision in the *Philadelphia Teachers Case*, the common pleas court was not. Hence, we reject that portion of the lower court opinion which interprets the *Philadelphia Teachers Case* as holding that "the failure of the City Council to adequately fund the School District's budget for the 1981-1982 school year voided the contract between the Philadelphia Federation of Teachers and the School District since it was *impossible for the School District to perform under the contract.*" *Board of Education of the School District of Philadelphia v. International Brotherhood of Firemen and Oilers, Local 1201, AFL-CIO*, November, 1981, No. 182, slip op. at 2 (Phila. C.C.P. July 27, 1982). (Emphasis added.)

[11] For example:

(1) contracts entered into with governmental bodies are unenforceable in the absence of appropriate funding, see e.g., *O'Donnell v. Philadelphia*, 385 Pa. 189, 122 A.2d 690 (1956);

((2) no provision in a collective bargaining agreement under PERA can conflict with the provisions of a municipal home rule charter, see 43 P.S. §1101.703; and

(3) the provisions of a public employment contract requiring legislative action will be effective only if such legislation is enacted, see 43 P.S. §1101.901.

504

(*i.e.,* the receipt of funding necessary to enable the District to meet fully its contractual obligations with the Union). Accordingly, we remand for a rehearing by the arbitrator for proceedings not inconsistent with this Opinion.

Vacated and remanded.

### ORDER

The Philadelphia County Common Pleas Court order, No. 182, November, 1981, dated July 27, 1982, is hereby vacated and remanded for proceedings not inconsistent with this Opinion.

Judges ROGERS and BLATT dissent.