539 A.2d 1365

Larry C. GRIM, Administrator of the Estate of Richard Matthew Grim, Deceased, Robert M. Grim, a Minor by His Parents and Natural Guardians, Larry C. Grim and Gloria J. Grim, and Larry C. Grim and Gloria J. Grim, Individually

v.

James H. BETZ, Columbus Truck Center, Dallas & Mavis Forwarding Co., Commonwealth of Pennsylvania, Department of Transportation (Two Cases).

Appeal of FREIGHTLINER CORPORATION (Two Cases).

Amy GRIM, a Minor by Her Parents and Natural Guardians, Bruce D. GRIM and Susan L. Grim, Donna Grim, a Minor, by Her Parents and Natural Guardians, Bruce D. Grim and Susan L. Grim and Bruce D. Grim and Susan L. Grim, Individually

v.

James H. BETZ, Columbus Truck Center, Dallas & Mavis Forwarding Company, Commonwealth of Pennsylvania, Department of Transportation (Two Cases).

Appeal of James H. BETZ and Dallas and Mavis Forwarding Company (Two Cases).

Superior Court of Pennsylvania.

Argued Nov. 9, 1987.

Filed April 8, 1988.

Joseph G. Manta, Philadelphia, for appellant (at 1203 and 1211) and for appellee (at 1201 and 1202).

Michael J. Piosa, Allentown, for Grim, appellees.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, OLSZEWSKI, BECK, TAMILIA and POPOVICH, JJ.

616

BROSKY, Judge:

■ This is an appeal from an order denying appellants' petition for leave to file an amended answer, with new matter pleading the affirmative defense of comparative negligence.[1] Appellants now contend that the denial constituted an abuse of discretion on the part of the trial court. Upon review of the record, and the briefs of counsel, we now affirm.

This matter arises from an automobile accident which occurred on May 26, 1983, at approximately 6:00 p.m., near the intersection of Route 100 and Spring Creek Road, in Lower Macungie Township, Lehigh County. Appellee Gloria Grim was operating a 1983 Chevrolet Monte Carlo north on Route 100, when a tractor trailer operated by appellant James H. Betz, in his capacity as an employee of appellant Dallas and Mavis Forwarding Company,[2] careened out of control on the wet pavement, across the center line of Route 100 into the oncoming lane of traffic, thereby colliding head-on with the Grim vehicle. Richard Grim, Gloria's three year old son, received severe internal injuries, and died later that evening. The remaining occupants of the Grim vehicle, including Gloria; Gloria's seven year old son, Robert; Gloria's sister-in-law, Susan Grim; and Susan's two minor children, Amy, age eleven, and Donna, age six, received injuries of varying severity. Gloria and Susan were occupying the front seat of the vehicle at the time of the accident, while all four minor children were seated in the rear passenger seat. None of the occupants in the Grim vehicle were wearing seat belts or other restraining devices.

1. Contributory negligence and assumption of the risk are affirmative defenses which must be pled in new matter, or are waived. Hence, the trial court's refusal to permit appellants to amend to plead the comparative negligence of appellees Susan Grim and Gloria Grim, is a final and appealable order. *Hughes v. Pron,* 286 Pa.Super. 419, 429 A.2d 9, 11 (1981); *Grota v. LaBoccetta,* 425 Pa. 620, 230 A.2d 206, 207 (1967); Pa.R.C.P. 1030 (as amended December 16, 1983); Goodrich Amram 2d § 1033:8.

2. The ownership of the tractor is currently in dispute. It is unclear whether the vehicle was owned by appellant Dallas and Mavis, appellant Freightliner Corporation, or Columbus Truck Center, Inc.

On July 25, 1984, two separate suits were filed in the Court of Common Pleas of Lehigh County. In the first action, the named plaintiffs were Larry and Gloria Grim, in their own right, and as the parents and natural guardians of Robert Grim,[3] while in the second action, suit was filed by Bruce and Susan Grim, in their own right, and as the parents and natural guardians of Amy Grim and Donna Grim. The named defendants in both actions were James H. Betz, Dallas and Mavis Forwarding Company, Columbus Truck Center, Inc., and the Commonwealth of Pennsylvania, Department of Transportation.[4] On February 28, 1985, both complaints were amended to add Freightliner Corporation as a named defendant, by stipulation of the parties.

■ After pleading and discovery had proceeded for approximately one year, appellants Betz, and Dallas and Mavis, filed a petition for leave to file an amended answer and new matter in both actions, in order to plead the following:

8. After a thorough review of the records and information received from plaintiffs, Betz and Dallas have concluded that use of seatbelts and/or a child restraining seat by the occupants of the plaintiffs' vehicle would have prevented and/or mitigated the injuries suffered by the plaintiffs.

9. Betz and Dallas aver that plaintiffs Gloria Grim and Susan Grim may be liable on each of the minor plaintiffs' claims due to their failure to have their children use seat belts and/or child restraining seats.

10. Betz and Dallas aver that plaintiff Susan Grim and plaintiff Gloria Grim may be comparatively negligent for their failure to wear their seat belts.

11. Betz and Dallas request leave to file an Amended Answer with New Matter so as to join plaintiffs Gloria Grim and Susan Grim as additional defendants under Pa.R.C.P. 2252(d) and also to plead Susan Grim's and

---

3. In the first action, Larry Grim was also a named plaintiff as the administrator of the Estate of Richard Grim.

4. It is alleged that PENNDOT was negligent in the design, construction, and maintenance of Route 100, a state-designated highway.

Gloria Grim's comparative negligence as an affirmative defense.

Appellant Freightliner Corporation joined in this petition, and filed a separate memorandum of law. On March 31, 1986, the petition was denied as a "violation of a positive rule of law". All appellants timely appealed, and the appeals were consolidated by stipulation of the parties, pursuant to Pa.R.A.P. 513.

Pa.R.C.P. 1033 states:

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

The courts of this Commonwealth have been liberal in permitting the amendment of pleadings. *Gallo v. Yamaha Motor Corp., U.S.A.*, 335 Pa.Super. 311, 484 A.2d 148, 150 (1984); *Tanner v. Allstate Ins. Co.*, 321 Pa.Super. 132, 467 A.2d 1164, 1167 (1983). Their discretion, however, is not unfettered; a defendant will not be permitted to amend his answer, to plead a new defense, where surprise or prejudice to the plaintiff will result, or where the proposed amendment is against a positive rule of law. *Posternack v. American Casualty Co.*, 421 Pa. 21, 218 A.2d 350, 351–52 (1960); Goodrich Amram 2d § 1033.7.

■ Appellants contend that the trial court erred in finding that their request to amend, in order to plead a "seat belt defense", was contrary to a positive rule of law.[5] Appellants cite to the decision in *Parise v. Fehnel*, 267 Pa.Super. 79, 406 A.2d 345 (1979), in support of their

5. The trial court did not hold, and appellees do not argue in their brief, that the attempt to amend was in any way untimely or prejudicial. In light of the resolution we reach *infra.*, we needn't decide whether the requested amendment constituted surprise or prejudice to the plaintiffs.

position that the availability of a "seat belt defense" remains an open question in Pennsylvania. In *Parise,* a panel of this Court held that, *in the absence of expert testimony* demonstrating a causal connection between the plaintiff's injuries and plaintiff's failure to wear a seat belt, it was not error on the part of the trial court to refuse to instruct the jury that the failure to use a seat belt could be evidence of contributory negligence on the issue of damages. *Id.,* 406 A.2d at p. 347. However, *Parise* also contained the following language with respect to the existence, per se, of a "seat belt defense":

> *"Our decision today should not be seen as foreclosing the possibility of a so-called 'seat belt defense' in future cases....* (t)he New Jersey Superior Court said that it might have allowed the defendant a seat belt defense if he had introduced expert testimony showing a relationship between the plaintiff's injuries and his failure to use seat belts (cites omitted).... *That is our position."* (Emphasis supplied.)

*Id.* As such, it would appear that appellants are substantially correct in their assertions that the trial court's decision to preclude amendment to plead a "seat belt defense", as contrary to law, was erroneous on the basis of the state of the law on March 31, 1986.[6]

---

**6.** We use the qualifier "substantially", as the state of the law at that time *did* preclude any attempt to plead Gloria Grim's negligence in failing to provide a seat belt or child restraint device to protect Richard Grim. Richard Grim died at the age of three, bringing his situation within the confines of the Child Passenger Protection Act, 75 Pa.C.S. §§ 4581–85, as it existed at the time amendment was attempted. That act stated, in relevant part:

§ 4581. Restraint Systems

(a) Child passenger protection.—*A parent or legal guardian of a child under four years of age who is operating a passenger car,* Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home registered in Pennsylvania and *who transports such child anywhere in the motor vehicle, including the cargo areas, shall fasten such child securely in a child passenger restraint system,* as defined in subsection (d). This subsection shall apply to all parents or legal guardians while they are operators of motor vehicles where a seating position is available which is equipped with a seat safety belt or other means to secure the systems or where the seating position was originally equipped with seat safety belts.

However, a reviewing court may affirm the decision of the trial court if the result is correct on any ground, without regard to the grounds relied upon by the trial court. *Butler v. DeLuca*, 329 Pa.Super. 383, 478 A.2d 840, 843 (1984). Moreover, it is well settled that an intervening change in the law must be applied to cases which are in the throes of direct appeal when the change occurs. *Leland v. J.T. Baker Chemical Co.*, 282 Pa.Super. 573, 423 A.2d 393, 396 (1980). We find that an intervening change in the law has occurred which mandates affirmance of the trial court's denial of permission to amend.

On November 23, 1987, the availability of a "seat belt defense" in Pennsylvania, ceased to be an open question, with the passage of Act 82 of 1987. Section 5 of that Act amends the Child Passenger Protection Act, 75 Pa.C.S. §§ 4581–85, to become the Occupant Protection Act. The relevant provisions of Section 5, which amend 75 Pa.C.S. § 4581, read as follows:

§ 4581. Restraint Systems.

(A) [Child Passenger] *Occupant Protection.* —[A Parent or Legal Guardian of a child under four years of age]

\* \* \* \* \* \*

(e) Civil actions.—*In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in any civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter, nor shall failure to use a child passenger restraint system be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil action;* nor shall this subchapter impose any legal obligation upon or impute any civil liability whatsoever to an owner, employer, manufacturer, dealer or person engaged in the business of renting or leasing vehicles to the public to equip a vehicle with a child passenger restraint system or to have such child passenger restraint system available whenever their vehicle may be used to transport a child. (Emphasis supplied).

Hence, conceding that *Parise* did not preclude a "seat belt defense" as to the adults' failure to protect themselves through appropriate restraints, and as to their failure to protect their minor children over the age of four through appropriate restraints, we nonetheless find that the state of the law on March 31, 1986, precluded the "seat belt defense" with respect to Gloria's failure to restrain three year old Richard, under the then-effective provisions of the Child Passenger Protection Act.

*(1) Any Person* who is operating a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home registered in Pennsylvania and who transports [such child] *a child under four years of age* anywhere in the motor vehicle, including the cargo area, shall fasten such child securely in a child passenger restraint system, as defined in subsection (d). This subsection shall apply to all [parents or legal guardians] *persons* while they are operators or motor vehicles where a seating position is available which is equipped with a seat safety belt or other means to secure the systems or where the seating position was originally equipped with seat safety belts.

*(2) Except for children under four years of age and except as provided in paragraph (1), each driver and front seat occupant of a passenger car, Class I truck, Class II truck or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system. A conviction under this paragraph by state or local law enforcement agencies shall occur only as a secondary action when a driver of a motor vehicle has been convicted of any other provision of this title. The driver of a passenger automobile shall secure or cause to be secured in a properly adjusted and fastened safety seat belt system any occupant in the front seat who is four years of age or older and less than 19 years of age....*

\*      \*      \*      \*      \*      \*

(E) Civil actions.—In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in a civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter; nor shall failure to use a child passenger restraint system *or safety seat belt system* be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil

action; nor shall this subchapter impose any legal obligation upon or impute any civil liability whatsoever to an owner, employer, manufacturer, dealer or person engaged in the business or renting or leasing vehicles to the public to equip a vehicle with a child passenger restraint system or to have such child passenger restraint system available whenever their vehicle may be used to transport a child. (Amendments emphasized in the original; deletions bracketed in the original.)

For additional clarification, the term "safety seat belt system" is also defined in Act 82, in Section 1, amending 75 Pa.C.S. § 102:

§ 102. Definitions

Subject to additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this title, the following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

\*     \*     \*     \*     \*     \*

*"Safety seat belt system." Any strap, webbing or similar device designed to secure a person in a motor vehicle in order to mitigate the results of any accident, including buckles, fasteners and all installation hardware as specified by Federal Motor Vehicle Safety Standard No. 209.* (Amendments emphasized in the original.)

The import of the amendments is clear: the legislature has decided that a defense of comparative negligence, in the form of a "seat belt defense", premised on either the failure of an adult to employ a seat belt for his own protection, or on the failure of an adult to employ a seat belt for his own protection, or on the failure of an adult to protect his minor children with seat belts, will not be available in any civil action in this Commonwealth. Section (E) of § 4581 clearly states that the failure to use a "child passenger restraint system" or "safety seat belt system" shall not be considered, in any civil action, as contributory negligence, and shall not be admissible as evidence in any civil action.

Moreover, the legislature has provided a definition of "safety seat belt system" which includes all known forms of mechanical restraint available, in order to preclude any misconstruction of its intent.

As Section 11 of Act 82 states that the amendments to § 102 and § 4581 "take effect immediately" upon passage of the Act, we conclude that Act 82 of 1987: Act of November 23, 1987 is controlling, and precludes the amendment of appellants' answer to plead a "seat belt defense" in new matter as comparative negligence. Such amendment is now contrary to a positive rule of law, and cannot be permitted.

Order affirmed.

BECK, J., files a concurring opinion.

CAVANAUGH, J. joins BECK, J., concurring opinion as well as the majority.

BECK, Judge, concurring:

The majority finds that an order denying the appellant's petition for leave to file an amended pleading, asserting plaintiffs' contributory negligence and assumption of the risk, is a final and appealable order. Under our current rules and case law, contributory negligence and assumption of the risk are affirmative defenses which are waived if not raised in new matter. Pa.R.Civ.P. 1030, 1032, *Grota v. La Boccetta*, 425 Pa. 620, 230 A.2d 206 (1967).

Furthermore, an immediate appeal must be sought. "[I]f review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978). The majority's conclusion is correct and I join. I write to address the need for reforming the rules of procedure relating to final orders and appealability.

In several recent cases the Pennsylvania Supreme Court has recognized that piecemeal appeals must be curtailed. In *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987), the Supreme Court held that an appeal of a sanction order for

failure to respond to interrogatories is interlocutory despite the fact that the sanction order in *Bruno* precluded presentation of an affirmative defense. The court concluded that appeal of the sanction order must await the final disposition of litigation.

In his dissent, Mr. Justice Hutchinson opined that the court was acting inconsistently. He noted that an order denying the plaintiff an opportunity to raise an affirmative defense was immediately appealable while a sanction order which had the same result for the plaintiff was not. He stated that unless the court overruled *La Bocetta* and its progeny, consistency required that the discovery sanction be viewed as a final order and appealable. *Id.*, 515 Pa. at 52, 526 A.2d at 784.

Mr. Justice Papadakos, writing for the majority, responded to the dissent and expressed the need to stem the tide of premature appeals:

> Mr. Justice Hutchinson has entered a dissent groping with the viability of *Grota v. La Boccetta*, 425 Pa. 620, 230 A.2d 206 (1967), which dealt with the substantive merits of an affirmative defense. By contrast, disposition of the case under review is based on the issue of a sanction order for failure to respond to interrogatories. This qualitative difference clearly distinguishes the two cases. But even more compelling is the yawning spectre of an avalanche of appeals which easily could overburden the judicial system. By insisting that sanctions are final orders, the dissent, in effect, would open the floodgates to perpetual judicial impermanence and impotence at the trial level and an unmanageable quantum of cases choking the appellate system.

*Id.* 515 Pa. at 50, n. 1, 526 A.2d at 782–83, n. 1.

Although the Supreme Court expressly limited its holding in *Bruno* to cases where a pre-trial sanction order precludes presentation of a defense, *Bruno* also presents a rationale which may herald a renewed review of what constitutes a final and appealable order. Mr. Justice Papadakos' rationale deserves broader application.

More recently, the Supreme Court embraced a stricter definition of what constitutes a final appealable order. In *Wall v. Wall*, 517 Pa. 29, 534 A.2d 465, 466–67 (1987), Mr. Chief Justice Nix, writing for the majority, adopted the principle that the proper time for appeal is when all matters have been resolved by the trial court. In the context of a divorce case, he concluded that an order that found a valid marriage between the parties was interlocutory because the trial court had not yet resolved other issues in the case relating to equitable distribution and alimony. In concluding that the decision as to the status of the parties alone was not final, the court stated:

> The [trial] court's determination as to the validity of the marriage was merely its decision as to a particular legal issue without being a 'final' resolution of the overlying claim or cause of action. . . . The question of whether the declaration as to the validity of the marriage is a final order must thus be resolved in accordance with the standards and policies addressing interlocutory appeals.

Mr. Chief Justice Nix noted that the Supreme Court disfavored piecemeal appeals, because:

> [A] policy which allows piecemeal appeals from a single case serves only to increase the cost of litigation, and favors the party with the greater resources, who can strategically delay the action at the expense of the indigent party.

*Fried v. Fried*, 509 Pa. 89, 97, 501 A.2d 211, 215 (1985), *quoted* in *Wall*, 534 A.2d at 467.

Another recent Pennsylvania Supreme Court case also restricts appealability. In *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 533 A.2d 998 (1987). Justice Flaherty held that,

> [a] pivotal consideration in determining whether an order is final and appealable is whether the plaintiff aggrieved by it has, for purposes of the particular action, been put "out of court" on *all* theories of recovery asserted against a given defendant for a given loss.

*Id.*, 516 Pa. at 539, 533 A.2d at 1000. (citations omitted) (emphasis added).

A strict definition of finality for purposes of appeal would limit the volume of the Pennsylvania appellate courts' work load, would discourage delay, and would encourage the orderly and efficient administration of appellate review. *See* Pines, Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction, 91 Dick.L.Rev. No. 1, 55, 58–59, n. 6. (1986).

As was recently stated in *National Recovery Systems v. Perlman*, 367 Pa.Super. 546, 533 A.2d 152, 154 (1987):

[B]oth the bench and bar would be better served by a return to the strict definition of a final order given in *Pugar v. Greco:* "one which usually ends the litigation, or alternatively, disposes of the entire case," 483 Pa. 68, 73, 394 A.2d 542, 545 (1978), at least as to one party to the suit.

It is important to note that a stricter definition of final order does not deny review. In most cases it postpones review until the matter has been finally adjudicated at the trial level. Nor does it completely close the door to review of interlocutory orders. If one of the parties determines that immediate review of a non-final order is essential, he or she can seek such review under Pa.R.App.P. 312, or under Pa.R.App.P. 1501.

We note that in the federal courts F.R.Civ.P. 54(b) addresses final orders in cases involving multiple parties or multiple claims.

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

With some flexibility, the rule requires that all matters be resolved at the trial level as a condition of appeal. In *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), Chief Justice Burger instructed that requests under Rule 54(b) should not be granted routinely and that the trial court should consider not only the equities involved in the case but also the efficient administration of justice.

I do not suggest the Rule 54(b) is the ideal solution for the efficient judicial administration in Pennsylvania. What I do point out is the need for reform. Confusion currently reigns in this area of the law. As Judge Del Sole cogently stated in his dissenting opinion in *Zarnecki v. Shepegi*, 367 Pa.Super. 230, 245, 246, 532 A.2d 873, 881 (1987) (Del Sole, J., dissenting):

> The present state of the law in this area is confusing to say the least. Our appellate courts have held that the failure to immediately appeal one of these misnomered 'final and appealable orders' results in a loss of the right to have the trial court action later reviewed.... This in and of itself invites cautious counsel, when faced with the difficult question of determining whether or not an order is appealable, to take an immediate appeal, delay the litigation at the trial level and further burden the appellate courts of Pennsylvania.... The law in this area ... is unclear and dangerous to litigants and lawyers. A total re-examination and re-evaluation must be forthcoming so that these interlocutory appeals which are taken from misnamed "final orders" would not be permitted.

CAVANAUGH, J., joins this concurring opinion as well as the majority.