454 A.2d 1092

**Shirleen BAKER, Individually and as Administratrix of the Estate of H. Earl Baker, Deceased, and Petrush & Miller, Ltd.**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1981.

Filed Dec. 30, 1982.

Petition for Allowance of Appeal
Denied Dec. 29, 1983.

84

Nancy J. Gellman, Philadelphia, for appellant.

John Miller, Beaver Falls, for appellee.

Before McEWEN, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

The orders appealed from granted plaintiff-appellee's motion for summary judgment in her suit against the appellant insurance company [Aetna] for work loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act [No-fault Act],[1] following the death of her husband in an automobile accident. The orders also awarded interest on the benefits to be paid at the rate of 18%, and attorney's fees, and denied Aetna's cross-motion for summary judgment.

Appellee [Shirleen Baker] brought suit in assumpsit, individually and as administratrix of her husband's estate, after the denial by Aetna of her claim for work loss benefits. The date of the fatal accident was February 10, 1978. On April 12, 1979, this court ruled that a widow whose husband was killed in an automobile accident was entitled under the No-fault Act to recover the work loss benefits which he would have recovered under his insurance contract if he had been permanently disabled. *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979), *aff'd*, 491 Pa.

---

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I *et seq.;* 40 P.S. § 1009.101 *et seq.* (Purdon Supp.1982).

447, 421 A.2d 629 (1980) [hereinafter *Heffner*]. On April 18, 1979, appellee presented a claim to Aetna for work loss benefits, under the rule of *Heffner*. By letter dated August 10, 1979, Aetna denied the claim for work loss benefits on the grounds that it did "not accept *[Heffner]* as the law of Pennsylvania".[2] Mrs. Baker's complaint was thereafter filed on May 13, 1980. The supreme court's opinion affirming this court's decision in *Heffner* was filed on September 22, 1980.

The trial court awarded the work loss benefits, relying on *Heffner*, which, as is explained in the opinion by Judge WALKO, it determined should be applied retroactively to cases where the cause of action accrued before the decision but where the complaint was filed after the decision.[3] The trial court based its award of interest on the applicable section of the No-fault Act, 40 P.S. § 1009.106(a)(2), and on the decision of our supreme court in *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981). The trial court based its award of attorney's fees on the No-fault Act § 1009.107(3), finding that Aetna's denial of the claim was without reasonable foundation.

## I.

*The Retroactivity of Heffner.*

 In Pennsylvania, judicial decisions are normally retroactive, and the construction placed by the court upon a

---

**2.** *See* Record, Exhibit 2. *See also Baker v. Aetna Casualty & Surety Co.*, No. 876 of 1980, slip op. at 9 (C.P. Beaver County, June 18, 1981).

**3.** *Baker v. Aetna Cas. & Surety Co.*, No. 876 of 1980 (C.P. Beaver County, June 18, 1981). The *Baker* case was consolidated for oral argument with six other cases where the question, *inter alia,* of the retroactivity of *Heffner* was raised by the insurance companies involved: *Keaten v. Aetna Life & Casualty Insurance Co.*, 309 Pa.Super. 101, 454 A.2d 1102, (1981); *Thomas v. Aetna Casualty & Surety Co.*, 309 Pa.Super. 105, 454 A.2d 1105, (1981); *Freeman v. Allstate Insurance Co.*, 309 Pa.Super. 101, 454 A.2d 1102, (1981); *Giles v. Allstate Insurance Co.*, 309 Pa.Super. 111, 454 A.2d 1108, (1981); *Rittner v. Aetna Life & Casualty Insurance Co.*, 309 Pa.Super. 114, 454 A.2d 1109, (1981); *Shomper v. Aetna Life & Casualty Co.*, 309 Pa.Super. 97, 454 A.2d 1101, (1981).

statute becomes part of the act from the very beginning. *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981); *Buradus v. General Cement Products Co.*, 159 Pa.Super. 501, 48 A.2d 883 (1946), *aff'd*, 356 Pa. 349, 52 A.2d 205 (1947).[4] A court's interpretation will be applied to cases arising from the time of the enactment of the statute unless vested rights are affected. *Ettinger v. Central Penn National Bank*, 634 F.2d 120 (3d Cir.1980); *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966).

In two recent cases in Pennsylvania where our supreme court ruled that its decision was to be applied prospectively only, the court made it quite clear that prospective application of a new rule is still the exception rather than the usual practice. *See Incollingo v. Ewing*, 444 Pa. 263, 299, 282 A.2d 206 (1971) (supreme court adopted the net earnings measure of damages in survival actions, overruling century-old rule that damages were to be awarded on the basis of the decedent's gross earnings). In deciding to make the new rule purely prospective the court said:

> [W]e do not treat this portion of our opinion as establishing a precedent for a general use of the prospective application technique. That the application is unusual and should be used but sparingly we candidly admit. We are mindful, however, of more than the deserving efforts of appellants in seeking renovation of an unsound or outmoded legal proposition; we look to the ultimate justice of the particular case before us. We must attempt to weigh the equities and determine the injustice caused by

4. *See Babcock & Wilcox Co. v. Workmen's Comp. Appeal Bd.*, 63 Pa.Commw. 61, 437 A.2d 778 (1981); *Myers v. Unemployment Comp. Bd. of Review*, 7 Pa.Commw. 640, 300 A.2d 917 (1973); *Harry C. Erb, Inc. v. Shell Construction Co., Inc.*, 206 Pa.Super. 388, 213 A.2d 383 (1965); *Philadelphia v. Schaller*, 148 Pa.Super. 276, 25 A.2d 406 (1942), *cert. denied*, 317 U.S. 649, 63 S.Ct. 43, 87 L.Ed. 522 (1942). *See also Commonwealth v. Krasner*, 285 Pa.Super. 389, 414–15 n. 1, 427 A.2d 1169, 1182 n. 1 (1981) (Spaeth, J., dissenting); *Commonwealth v. Lewis*, 247 Pa.Super. 46, 58, 371 A.2d 1318, 1324 (1977) (Spaeth, J., dissenting). *See generally* Traynor, *Transatlantic Reflections On Leeways and Limits of Appellate Courts*, 1980 Utah L.Rev. 255; Currier, *Time and Change in Judge-Made Law: Prospective Overruling*, 51 Va.L.Rev. 201 (1965).

allowing the century-old Radobersky rule its one last gasp in a case where the justified expectations of the plaintiffs would otherwise be defeated.

*Incollingo v. Ewing,* 444 Pa. at 311, 282 A.2d at 230. *See also, Catherwood's Trust,* 405 Pa. 61, 173 A.2d 86 (1961).

Both of these decisions, *Incollingo* and *Catherwood,* raised the retroactivity issue because they involved the *overruling* of prior Pennsylvania supreme court decisions.[5] *Heffner* was not such a case. It did not overrule any appellate court decisions. Similarly, the cases discussing retroactivity which are cited to us by the appellant insurance company concern appellate decisions which specifically overruled prior appellate decisions or long-standing doctrines. In each case the prevailing rule of retroactivity was followed. *See August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981) (case overruling prior case to the contrary, and holding late notice of injury would release insurance companies only where late notice was prejudicial, to be applied retroactively); *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980) (case abrogating doctrine of sovereign immunity to be applied retroactively); *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977) (federal appeals court decision holding Pennsylvania rules on foreign attachment unconstitutional, overruling a decision to the contrary in the same court, to be applied retroactively); *Leland v. J.T. Baker Chemical Co.,* 282 Pa.Super. 573, 423 A.2d 393 (1980) (supreme court decision proscribing use of words "unreasonably dangerous" in jury instructions in product liability cases to be applied retroactively).

Similarly, the three factor test described by the Supreme Court of the United States in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), by its terms seems to apply in particular to *overruling* decisions or at least to decisions *which change the law:*

---

5. *Compare Zemprelli v. Thornburgh,* 47 Pa.Commw. 43, 56, 407 A.2d 102, 108 (1979), where the court held that its decision resolving an issue of first impression, which arose under a constitutional provision dealing with gubernatorial appointments, should be applied prospectively.

[F]irst, the decision to be applied nonretroactively must establish a *new principle of law,* either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed .... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to *the prior history of the rule in question,* its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355, 30 L.Ed.2d at 306.[6] (Citations omitted.) (Emphasis supplied.)[7]

With respect to appellant's reliance on *Chevron Oil,* we do not agree with appellant that *Heffner* established a new principle of law. It did indeed decide for the first time on the appellate level that the No-fault Act provides for work

6. The *Chevron Oil* factors are referred to in the Pennsylvania cases discussed *supra: Gibson, Schreiber* and *Leland.*

7. In *Chevron Oil* itself the Supreme Court held that the Louisiana statute of limitations should not be applied retroactively to personal injury suits whose cause of action accrued prior to the Court's ruling, in *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), that the state statute of limitations, rather than general admiralty law, applied to personal injury suits brought under a federal statute governing injuries occurring on the Outer Continental Shelf. Retroactive application would have deprived the plaintiff of any remedy. *Rodrigue* was a case of first impression in the Supreme Court and overruled a long line of appellate court cases. It was "quite unforseeable" that the earlier rule would be overturned. And finally, retrospective application of the new rule would produce substantial inequitable results, whereas prospective application would preserve the plaintiff's right to a day in court. *See* 404 U.S. at 108, 92 S.Ct. at 356, 30 L.Ed.2d at 306–07. This situation is distinguished from the situation before us where prospective application of *Heffner* would deprive survivors of deceased victims of benefits to which our appellate courts have determined they are entitled under the No-fault Act.

loss benefits for deceased victims of automobile accidents. But recovery for loss of wages by a deceased accident victim is not unknown to the law. *See* wrongful death and survival actions, 42 Pa.C.S.A. §§ 8301, 8302 (Purdon Pamp. 1982), the case law thereunder, and *Heffner,* 265 Pa.Super. at 190, 401 A.2d at 1164. Were this court to have decided that there was *no* recovery of lost wages in a fatal accident under the No-fault Act, as was argued in *Heffner,. that* would have been a new principle of law.

■ Neither do we agree with appellant that *Heffner* overruled clear past precedent. In *Chevron Oil* the new principle of law whose retroactivity was in question was a direct, unexpected overruling of a series of appellate court cases. Expectations of the insurance industry, and an "understanding" by the Pennsylvania Department of Insurance that "the payment of work loss benefits for a deceased victim was not a loss projected by the [insurance] companies"[8] cannot constitute, even in conjunction with common pleas court decisions, the type of precedent or long-standing doctrine the overruling of which might lead to a decision of non-retroactivity.

Thus the first *Chevron Oil* factor—that the decision to be applied must establish a new principle of law either by overruling precedent or by deciding an issue of first impression—simply does not apply. As this first factor is not met, we do not reach the other two factors.[9]

■ Appellant also cites to us the test used by Justice LARSEN in *August v. Stasak.*[10] This was first proposed

---

8. *See* reproduced record at 65a, affidavit of former Chief Actuary, Pennsylvania Department of Insurance.

9. *See Schreiber v. Republic Intermodal Corp., supra,* where our supreme court, once it found that the overruling decision did not establish a new principle of law which might be applied prospectively, did not further consider the other two *Chevron Oil* factors. 473 Pa. at 622 n. 6, 375 A.2d at 1289 n. 6.

10. Justice LARSEN's opinion was joined by two justices, as was Justice ROBERTS' concurring opinion. Justice NIX concurred in the result.

by Justice TRAYNOR of the California Supreme Court in a law review article, and involves balancing of the hardships between the parties. *See* 492 Pa. at 554–55, 424 A.2d at 1330–31. But this test, again, applies specifically to *over-ruling* decisions, hence it is not applicable to a straightforward statutory interpretation case. We prefer therefore to borrow from the rationale of an opinion by Judge ALDISERT of the Court of Appeals for the Third Circuit, who had before him the retroactivity *vel non* of a district court construction of a Pennsylvania statute. *See Ettinger v. Central Penn National Bank*, 634 F.2d 120 (3d Cir.1980). Having described the general rule in Pennsylvania on retroactivity of decisions construing Pennsylvania statutes and the exception thereto, Judge ALDISERT stated:

> "We conclude that the general Pennsylvania rule of statutory construction applies as set forth in *Buradus:* "the construction placed upon a statute by the courts becomes a part of the act, *from the very beginning.*" We are not persuaded that there could have been vested rights [11] based on a contrary interpretation of [the statute in question], because there were neither Pennsylvania decisions holding to the contrary nor legal scholarship pointing in that direction. Therefore, we cannot call into play the exception to the Pennsylvania rule under which full retroactivity is denied to those decisions that operate to the detriment of persons who have acted in reliance on an older rule. There simply was no clear "older rule" in Pennsylvania.

11. Appellant argues that because vested rights and contracts cannot be altered or affected by later judicial construction, the "vested rights" exception applies here. Appellant appears to argue that its premium structure was based on its *reliance* on pre-*Heffner* authority, and also that the work loss beneficiaries here involved would be recovering benefits for which they had not paid. We do not view the within facts as rising to the level of "vested rights", "contracts" or "detrimental reliance."

634 F.2d at 125–26.[12]

■ Despite appellant's arguments to the contrary, we find that Pennsylvania law clearly leads us to a holding of retroactivity in this case. As this court has already stated, in *Heffner* we decided an issue of statutory construction. We created no new right, and made no change in the law. *See Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 293 Pa.Super. 483, 486, 439 A.2d 678, 680 (1981) *aff'd*, 500 Pa. 167, 455 A.2d 101 (1982); *Daniels v. State Farm Mutual Automobile Insurance Co.*, 283 Pa.Super. 336, 343, 423 A.2d 1284, 1288 (1980). We now hold that the decision in *Heffner* is indeed applicable to cases where the cause of action accrued before that decision but the complaint was filed after, provided of course that the claim is not barred by the applicable statute of limitations.[13]

## II.

*Attorney's Fees*

The No-fault Act provides at section 1009.107(3):

If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

**12.** *See also* the following language from Justice STEWART'S dissenting opinion in *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972):

An issue of the "retroactivity" of a decision of this Court is not even presented unless the decision marks a sharp break in the web of the law. The issue is presented only when the decision overrules clear past precedent, ... or disrupts a practice long accepted and widely relied upon....

407 U.S. at 381–82 n. 2, 92 S.Ct. at 2180 n. 2, 33 L.Ed.2d at 9 n. 2 (citations omitted).

**13.** *Compare Gurnee v. Aetna Life & Casualty Co.*, 55 N.Y.2d 184, 433 N.E.2d 128, 448 N.Y.S.2d 145 (1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 83, 74 L.Ed.2d 79 (U.S.1982). In *Gurnee* the New York Court of Appeals held that its earlier decision construing the New York no-fault statutory phrase "first party benefits" should be applied retroactively to all claims not barred by the statute of limitations.

The trial court awarded an amount of $3,500.00, representing reasonable attorney's fees incurred in prosecuting Mrs. Baker's action against Aetna. The trial court determined that Aetna's refusal to accept the superior court's decision in *Heffner* as the law, followed by Aetna's refusal to pay the benefits after the supreme court affirmed the superior court's decision, on the ground that *Heffner* should not be applied retroactively, was a denial without reasonable foundation.

Until a decision of the superior court is overruled by the supreme court, that decision is the law of this Commonwealth. *Townsend Trust*, 349 Pa. 162, 168, 36 A.2d 438, 441 (1944). Since this court's decision in *Heffner*, Aetna has persistently refused to pay the work loss benefits which we have interpreted the No-fault Act to provide. Appellant asserts that under *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981), the test of a reasonable denial of a claim is met. We disagree. In *Hayes* the claimant was a pedestrian who owned a car which was uninsured, in violation of the No-fault Act, and who was struck by a vehicle insured by Erie. This court held that the uninsured victim was entitled to recover basic loss benefits from the insurer of the vehicle which struck her and was not limited to the more restrictive benefits under the assigned claims plan of the No-fault Act. *Hayes v. Erie Insurance Company, [Hayes, I.]*, 261 Pa.Super. 171, 395 A.2d 1370 (1978). The trial court, this court and the supreme court, in denying attorney's fees, all agreed in that situation that Erie's denial was not in bad faith, and that the issue created was novel and not without substance. *Hayes I*, 261 Pa.Super. at 176, 395 A.2d at 1373; *Hayes II*, 276 Pa.Super. 424, 428, 419 A.2d 531, 532 (1980), *aff'd in part & rev'd in part*, 493 Pa. 150, 160, 425 A.2d 419, 424 (1981). Further distinctions between the situation in *Hayes* and the situation now before us are that, first, the claimant was herself in violation of the No-fault Act by failing to obtain insurance coverage, and second, the insurance company, by the time the claimant sued for interest at 18% and

for attorney's fees, had promptly paid the amount due together with interest at the rate of 6%. *See Hayes II*, 276 Pa.Super. at 427, 419 A.2d at 532. Most importantly, though, whereas in *Hayes* there was a reasonable question as to the liability of an insurer to its insured's uninsured accident victim, here the liability of insurance companies for work loss benefits to the survivors of deceased victims has been made clear and unequivocal. And, as we have shown, retroactivity is the classic rule for judicial interpretation of statutes. Thus the attempted defense of non-retroactivity is without merit and has caused needless delay and expense to appellee. We are therefore of the view that under the rationale of *Hayes*, in the circumstances of this particular case, Aetna's continuing denial of the claim has been without reasonable foundation.

■ We now hold that where, as here, the liability of insurance companies to pay certain benefits has been determined by an appellate court's construction of the No-fault Act, and an insurance company subsequently denies those benefits to a claimant entitled, under the statute as interpreted by the court, to the benefits, the claimant shall be awarded reasonable attorney's fees as provided in section 1009.107 of the No-fault Act.

We note that in its Order for the Entry of Judgment, the trial court awarded attorney's fees in the amount of $3,500 to plaintiffs Petrush & Miller, Ltd., a professional corporation engaged in the practice of law, and claimant's counsel of record. The Stipulation of Facts, filed by the parties on January 28, 1981 in the trial court, contains the following language which we understand to have been the basis for the trial court's order awarding attorney's fees:

21. In the prosecution of this action and in the assertion of her claims to "Work Loss" benefits as a result of the death of H. Earl Baker, deceased, plaintiff Shirleen Baker has incurred legal fees in an amount totaling $3,500.00; of this total, the amount of $3,500.00 was incurred after April 12, 1979, the date of the Superior Court's decision in *Heffner v. Allstate Insurance Co.;* the amount of

$2,000.00 was incurred after September 22, 1980, the date of the Pennsylvania Supreme Court's decision in *Heffner v. Allstate Insurance Co.*

It thus would appear that the trial court granted attorney's fees from the date of the superior court's decision in *Heffner* (April 12, 1979), rather than from the date of the supreme court's decision in *Heffner* (September 22, 1980). Although this matter was not argued to us by the parties, it is clear from the record that the parties recognized that the point in time from which an award of attorney's fees is properly granted depends in part on the state of the law on a given issue.

The No-fault Act provides that the award of counsel fees shall follow a denial of liability by a carrier "without reasonable foundation." We note that, following our supreme court's grant of the petition for allowance of appeal in *Heffner*, that court received *amicus curiae* briefs submitted by the Pennsylvania Trial Lawyers Association on behalf of appellee Heffner, and by the Insurance Federation of Pennsylvania, the National Association of Independent Insurers, and the American Insurance Association on behalf of the appellant insurance carriers, in addition to briefs submitted by both sets of appellants and appellees in that consolidated appeal. *Heffner*, 491 Pa. at 450 n. 3, 421 A.2d at 631 n. 3. The question of whether a survivor was eligible for work loss benefits under the No-fault Act had not been reviewed by our appellate courts prior to *Heffner*, and we are not prepared to conclude that the question in *Heffner* was anything other than a significant question under the Act.

We have already stated that Aetna denied the claim for work loss benefits in its letter to appellee dated August 10, 1979 on the grounds that it did "not accept the [superior court's decision in *Heffner*] as the law of Pennsylvania," and that it was in part because of this that the trial court decided that Aetna's denial of benefits was without reasonable foundation.[14]

14. *See supra* note 2 and p. 1098.

The fact that our supreme court chose to consider the issue of survivor's rights to recover work loss benefits, that there were *amicus* briefs on both sides of the argument, and that Justice NIX's written opinion analyzed and resolved the question for the supreme court, signifies that we should not find a lack of reasonable foundation in Aetna's refusal to pay work loss benefits until the supreme court rendered its decision.

However, for the reasons set forth in Part I of this opinion, we find no justification for Aetna's further denial of benefits once the supreme court's opinion in *Heffner* was filed on September 22, 1980. Although the Stipulation of Facts provides for an award of attorney's fees in the amount of $2,000 for work performed between September 22, 1980 and January 28, 1981, the date when the Stipulation was filed, this case will be remanded to the trial court for a determination of reasonable attorney's fees, based upon actual time expended, between the date of the supreme court's decision in *Heffner* and the present time. The trial court's award of attorney's fees will be vacated for this purpose.

## III.

### The Interest On Overdue Benefits

The No-fault Act provides that No-fault benefits are overdue if not paid within thirty days of receipt by the insurance company of reasonable proof of the fact and amount of loss, and that overdue payments bear interest at the rate of eighteen percent (18%) per annum. *See* 40 P.S. § 1009.106(a)(2). Our supreme court has ruled that the 18% interest rate is owed regardless of the good faith of the insurer or the reasonableness of the delay. *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981).

There is thus no question that interest at the rate of 18% is due. The dispute is as to the date from which the interest is due. The trial court appears to have calculated

the interest as due from March 10, 1978, thirty days after the date of the fatal accident. Appellant argues that this is in error because, according to the No-fault Act, section 1009.106(a)(2), "[n]o-fault benefits are overdue if not paid within thirty days *after receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained* ...." (Emphasis added.) We agree in this instance with appellant. The No-fault Act provides at section 1009.106(a)(1):

> No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained.

Benefits start to accrue, on the facts of this case, from the date of death. Payments become overdue, however, if not paid within thirty days of notice to the insurance company. Once a claim has been presented, the insurance company's failure to pay the accrued benefits within thirty days of notice shall obligate the insurance company to add interest, at the rate of 18% per annum, to the accumulated unpaid benefits, for each month beyond the thirty day statutory period that the benefits remain unpaid.

In this case, the record shows that the application form for the claim for work loss benefits was submitted by Mrs. Baker to Aetna on May 31, 1978. Appellant suggests, and we agree, that thirty days after receipt of this claim by Aetna is the earliest due date for payment of these benefits. Interest at the rate of 18% therefore should be calculated from June 30, 1978 which is thirty days later. The order of the trial court should therefore be adjusted to reflect a calculation of interest on the benefits to be paid at the statutory rate of 18% from June 30, 1978, until the time of payment.

## IV

*Conclusion*

The order of the trial court awarding work loss benefits is affirmed. The orders awarding attorney's fees and inter-

est are vacated.[15] The case is remanded for a calculation of interest to be paid consistent with the views expressed in this opinion, and for a determination of reasonable fees due claimant's attorneys as a result of appellant's continuing denial of the claim and its prolongation of this action through appeal. Jurisdiction is not retained.

**15.** Our decision to vacate the order awarding interest to permit the trial court, on remand, to calculate the interest in accordance with the views expressed in this opinion does not militate against the award of attorney's fees as set forth in Section II of this opinion. Appellant's position throughout this litigation has been that work loss benefits are not due in this case. Appellant has not argued, either in its brief or at oral argument, that the dispute as to calculation of interest due would support the total refusal to tender the work loss benefits claimed by appellee.