513 A.2d 391

**Rose RAGO, Administratrix of the Estate of Christine Anne Sciambra a/k/a Anne Christine Sciambra, Deceased and Anne C. Sciambra, Parent in Her Own Right, Appellant**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed July 23, 1986.

208

John W. Craynock, Philadelphia, for appellant.

Fredric D. Rubin, Morrisville, for appellee.

Before WICKERSHAM, BECK and HOFFMAN, JJ.:

BECK, Judge:

We are today presented with an issue of first impression: to what extent must a parent rely on the financial support and uncompensated services provided by a child in order to be a "dependent" for purposes of receiving survivor's benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act).[1]

Consistent with the remedial nature of the No-fault Act, we hold that a claimant must demonstrate on the record an actual dependency but need not show such complete reliance that any finding of independence would negate the finding of dependency. The test is whether the child's earnings were needed to provide the parent with

1. Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–.601, repealed by the Act of February 12, 1984, P.L. 26.

some of the ordinary necessities to maintain the parent in an established, reasonable standard of living for a person in the parent's socioeconomic position.

We therefore reverse the trial court's denial of survivor's benefits and remand for additional proceedings.

Christine Anne Sciambra was 20 years old at the time of her death. Prior to her death, Christine shared a modest two-bedroom apartment with her mother. Both women worked at Dali-fresh: Christine worked as a seasoner; her mother worked as a packer. Their net weekly incomes were $125 and $103, respectively. With the exception of approximately $20 per week that Christine kept for her own clothes, cosmetics, entertainment, etc., both mother and daughter contributed their entire paychecks to pay for household expenses. The total annual income which they jointly contributed to the household was $10,800. The estimated yearly expenses of the joint household were $11,-020. Neither Christine nor her mother owned an automobile.

On November 25, 1981, Christine was killed in a collision involving a car in which she was a passenger. State Farm Mutual Automobile Insurance Company (State Farm) was the automobile owner's insurer. Rose Rago (Christine's sister and estate administratrix) and Anne C. Sciambra (Christine's mother) sued State Farm for work loss and survivor's benefits, attorney's fees and interest pursuant to 40 P.S. §§ 1009.202(b), 1009.202(d), 1009.107(3) and 1009.-106(a)(2), respectively.

State Farm made a lump sum payment of $15,000 in work loss benefits and also paid $4,000 in interest thereon due to its failure promptly to pay the work loss benefits. *See* 40 P.S. § 1009.106(a)(2). At trial on the remaining claims, the judge denied Ms. Sciambra's claim for survivor's benefits, awarded an additional $1,072.38 interest on the work loss claim and awarded $292.50 in attorney's fees on the work loss claim. Appellants appeal the denial of survivor's benefits and the allotted attorney's fees.

Survivor's benefits under the No-fault Act are limited to $5,000. 40 P.S. § 1009.202(d). Section 103 of the Act, 40 P.S. § 1009.103, defines the terms "survivor" and "survivor's loss" as follows:

"Survivor" means:

(A) spouse; or

(B) child, parent, brother, sister or relative *dependent upon the deceased for support.* (Emphasis added.)

"Survivor's loss" means the:

(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and

(B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury,

reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury.

As a condition precedent to qualifying for survivor's benefits under the No-fault Act, all non-spouse relatives must show that they were "dependent upon the deceased for support." 40 P.S. § 1009.103; *Chesler v. Government Employees Insurance Co.,* 503 Pa. 292, 469 A.2d 560 (1983); *Midboe v. State Farm Mutual Auto Insurance Co.,* 495 Pa. 348, 433 A.2d 1342 (1981) (plurality).

We are asked to interpret the statutory language "dependent upon the deceased for support." 40 P.S. § 1009.-103. The term "dependent" is not defined in the No-fault Act. In construing the concept of dependency, the trial court utilized *Black's Law Dictionary* definition of a dependent as "[o]ne who derives his or her *main* support from another." *Id.* at 393 (5th ed. 1979) (emphasis added). The trial court analyzed whether Christine was her mother's main support and determined she was not.

In determining the meaning of the term "dependent" as it applies to survivor's claims under the No-fault Act, we are guided by the broad remedial purpose of the No-fault Act, namely, "to establish a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b); *Bills v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 188, 463 A.2d 1148 (1983); *Daniels v. State Farm Mutual Automobile Insurance Co.,* 283 Pa.Super. 336, 423 A.2d 1284 (1980).

We are also cognizant that one basis for the passage of the No-fault Act was the General Assembly's stated finding that "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce." 40 P.S. § 1009.-102(a)(3). Given these manifestations of legislative intent in creating the No-fault Act, we conclude that the remedial purpose of the No-fault Act would not be served by limiting the term "dependent" to signify only a person who relied on a decedent either for his or her sole support or for his or her main support. Rather, the legislative intent of the No-fault Act is best furthered by defining "dependent" to include any spouse or relative to whose support a decedent made substantial contributions—whether of financial resources or uncompensated services, 40 P.S. § 1009.103— such that without the decedent's contributions, the claimant is unable to continue the lifestyle that was made possible through the decedent's contributions to the claimant's support. Moreover, we have previously recognized that "if we are to err in ascertaining the intent of the Legislature ..., we should err *in favor of* coverage...." *Crawford v. Allstate Insurance Co.,* 305 Pa.Super. 167, 170, 451 A.2d 474, 476 (1982) (emphasis in original).

■ The trial court found that the mother was forced to relinquish her apartment within six weeks of her daughter's death. Nevertheless, the trial court reasoned that "al-

though she [the mother] found it necessary to reside with her [other] daughter, Mrs. Rago [Christine's sister], following the accident, for emotional and financial reasons, the fact that one salary could no longer maintain a household formerly augmented by two salaries does not warrant a conclusion of dependency." Trial court opinion at 6.[2] We conclude that the trial court's interpretation of the word "dependent" does not comport with the legislative intent expressed in the No-fault Act.

We now consider whether under the facts of the present case, Ms. Sciambra was dependent upon Christine for support. Neither Ms. Sciambra nor Christine was the sole support or the main support of the other. Instead, the two were interdependent in that each supported and was supported by the other. The facts of record show that Christine's assistance and financial support provided her mother with some of the ordinary necessities for her mother's modest and reasonable living standard consistent with persons in her socioeconomic position. The record also evidences that Ms. Sciambra was unable to maintain her modest lifestyle in the absence of Christine's support. Therefore, Ms. Sciambra was dependent on her daughter Christine for purposes of entitlement to survivor's benefits under the No-fault Act, and we accordingly reverse the trial court's order and remand for a determination of the proper benefits, *Wercoch v. Liberty Mutual Insurance Co.*, 287 Pa.Super. 45, 429 A.2d 712 (1981),[3] and interest thereon. 40

---

2. The trial court noted that neither Ms. Sciambra nor Christine declared the other as a dependent on federal income tax forms. However, we do not regard that fact as controlling. The purposes of the Internal Revenue Code and the No-fault Act are dissimilar. The dependency criteria of the Internal Revenue Code concern only the availability of a deduction for federal income tax whereas the dependency criteria of the No-fault Act concern the desirability of compensating a class of individuals for loss suffered as a result of a vehicular accident. See discussion, supra, of the purpose and expressed legislative intent underlying the No-fault Act.

3. *Overruled on other grounds, Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd*, 507 Pa. 68, 488 A.2d 571 (1985).

P.S. § 1009.106(a)(2); *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981).

Having determined that Ms. Sciambra is entitled to survivor's benefits, we turn to the remaining issue regarding the award of reasonable attorney's fees.[4] In this respect, appellant Rago as administratrix of Christine's estate, presents two theories.

Appellant's first argument is that the court erred by not awarding fees for the period of State Farm's delay in paying work loss benefits after the Superior Court decision in *Freeze v. Donegal Mutual Ins. Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982), but before the Pennsylvania Supreme Court's review of the same case, *Freeze v. Donegal Mutual Ins. Co.*, 504 Pa. 218, 470 A.2d 958 (1983). The trial court *did* award fees for the four-month period of delay following the Supreme Court decision. Appellant, however, urges that the Superior Court decision, rather than the Supreme Court decision, is the proper starting point for calculating State Farm's delay in payment and hence for determining the period for which attorney's fees could be awarded. We disagree with appellant.

■ Attorney's fees are awarded where an insurer has, without a reasonable foundation for doing so, denied payment of a claim made pursuant to the No-fault Act. 40 P.S. § 1009.107(3). An insurer lacks a reasonable basis for denying a particular claim if an appellate court has already held that such a claim is payable. As we explained in *Baker v. Aetna Casualty and Surety Co.*, 309 Pa.Super.

---

4. Because we hold that Ms. Sciambra was a dependent and thus was a survivor entitled to survivor's benefits, we remand to the court of common pleas for a determination of the amount of survivor's benefits which Ms. Sciambra should receive. *See Wercoch v. Liberty Mutual Insurance Co.*, 287 Pa.Super. 45, 429 A.2d 712 (1981), *overruled on other grounds, Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985).

81, 454 A.2d 1092 (1982),[5] and *Hiers v. Keystone Insurance Co.*, 308 Pa.Super. 288, 454 A.2d 134 (1982), when

> the liability of insurance companies to pay certain benefits has been determined by an appellate court's construction of the No-fault Act, and an insurance company subsequently denies those benefits to a claimant entitled, under the statute as interpreted by the court, to the benefits, the claimant shall be awarded reasonable attorney's fees as provided in section 1009.107 of the No-fault Act.

*Baker*, 309 Pa.Super. at 93, 454 A.2d at 1098.

Thus, in general, attorney's fees are granted where an insurer has refused a claim after the Superior Court has filed an opinion holding the claim payable. *Baker; Hiers.* The rationale for awarding attorney's fees in this context is that unless and until a Superior Court decision is overruled by the Supreme Court, the Superior Court decision constitutes the law of Pennsylvania with regard to the subject matter of the decision. *Baker.*

However, the general rule has an exception. Where an issue under the No-fault Act is accorded review by the Pennsylvania Supreme Court, the insurer can assert that it possessed a reasonable basis for denying benefits before the Supreme Court rendered its decision. *Wingeart v. State Farm Mutual Automobile Insurance Co.*, 340 Pa.Super. 420, 490 A.2d 849 (1985) ("[t]he fact that the supreme court chose to consider the issue and discussed it at length even after the superior court's prior decision, indicates that we should not find a lack of reasonable foundation"); *Baker* ("[t]he fact that our supreme court chose to consider the issue ..., that there were amicus briefs on both sides of the argument, and that Justice Nix's written opinion analyzed and resolved the question for the supreme court, signifies that we should not find a lack of reasonable foundation"). In *Wingeart*, we specifically held that attorney's fees

5. *Overruled on other grounds, Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985).

should not be awarded where the insurer denied an estate's claim for work loss benefits after the Superior Court's decision, but before the Supreme Court's decision, in *Freeze.* Our court's holding in *Wingeart* controls the resolution of appellant's first contention regarding attorney's fees; hence, we conclude that State Farm's denial of appellant's work loss claim pending the Supreme Court's decision in *Freeze* was not unreasonable. Accordingly, the trial court properly determined that appellant was entitled to attorney's fees only for the period following the Pennsylvania Supreme Court's decision in *Freeze.*

■ Appellant's second argument for augmented attorney's fees is that appellant's counsel should receive a fee award for counsel's efforts to have State Farm compute the interest owed to appellant on overdue work loss benefits [6] by figuring the amount of interest due on a lump sum payment of work loss benefits rather than that due on monthly accrued payments of work loss benefits.[7] Our analysis is again premised on the principle that attorney's fees are awarded only where the insurer has "denied the claim or any significant part thereof without reasonable foundation." 40 P.S. § 1009.107(3). The trial court determined that disparate holdings in two appellate court decisions concerning payment of work loss benefits provided a reasonable foundation for State Farm's refusal to calculate interest on a lump sum payment instead of monthly accrued payments. We agree.

6. Under Section 106 of the No-fault Act, "[n]o-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained...." 40 P.S. § 1009.106(a)(2). "[W]here a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the 'good faith' of the insurer or the 'reasonable cause' of the delay." *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981); *Hall v. Midland Insurance Co.,* 320 Pa.Super. 281, 467 A.2d 324 (1983).

7. The issue of whether work loss benefits and the interest thereon should be paid in a lump sum or in monthly accruements is not before us in this appeal.

In its October 14, 1983, en banc opinion in *Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983), the Superior Court unanimously held that under the No-fault Act, post-mortem work loss benefits were payable in a lump sum to a victim's survivors. The Superior Court expressly overruled two of its earlier decisions, *Baker* and *Wercoch*, to the extent that they had suggested that post-mortem work loss benefits should be paid in monthly accruements as if the victim had lived. *See* P.S. § 1009.-106(a)(1).

On December 30, 1983, two months after the Superior Court's *Antanovich* opinion was filed, the Pennsylvania Supreme Court decided *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983). While *Kamperis* involved solely a question of the appropriate date on which the statute of limitations would begin to run for commencing an action under the No-fault Act, *see* 40 P.S. § 1009.106(c), some of the language in *Kamperis* intimated a preference for monthly accrued benefit payments rather than a lump sum benefit payment. The Supreme Court emphasized in *Kamperis* that the No-fault Act

> clearly looks to a continuing series of losses with each failure of a victim to receive his or her normal financial remuneration for work the victim could have performed had the accident not rendered the victim unable to work.... 'No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as ... work loss ... is sustained.' 40 P.S. § 1009.106(a)(1). Thus, it is clear that work loss is sustained each time a victim suffers economic detriment, or, as in the case at bar, misses a paycheck he would ordinarily have earned, but for the injuries sustained in the accident.

*Id.*, 503 Pa. at 540, 469 A.2d 1384.

On February 10, 1984, less than two months after deciding *Kamperis*, the Pennsylvania Supreme Court granted a petition for allowance of appeal from the Superior Court's en banc ruling in *Antanovich*. Approximately two months thereafter, on April 23, 1984, State Farm gave appellant a

$15,000 lump sum payment which represented the No-fault Act's statutory maximum work loss benefits. On that same date, State Farm also paid appellant interest on the $15,000 work loss benefits because the $15,000 payment was overdue as defined by section 106 of the No-fault Act and thus interest was owed. 40 P.S. § 1009.106(a)(2). However, State Farm calculated the amount of interest due by assuming that the work loss benefits had become payable in monthly accruements. *See Kamperis.*

Given the Pennsylvania Supreme Court's decision to review the Superior Court's *Antanovich* opinion, see discussion supra of *Wingeart* and *Baker,* and the seemingly unsettled state of Pennsylvania's law as evidenced by the apparent incongruity between the Superior Court's *Antanovich* holding and the Supreme Court's *Kamperis* analysis, *see, e.g., Kirsch v. Nationwide Insurance Co.,* 532 F.Supp. 766 (W.D.Pa.1982); *Hall v. Midland Insurance Co.,* 320 Pa.Super. 281, 467 A.2d 324 (1983), we conclude that State Farm did not lack a reasonable foundation for computing interest on the basis of the monthly accrued benefits payable.[8] Therefore, the trial court properly denied an award of attorney's fees based on appellant's assertion of an unlawful interest computation.

The order of the trial court is reversed in part and affirmed in part. That portion of the trial court's order denying survivor's benefits to appellant Sciambra is re-

8. The Pennsylvania Supreme Court's decision in *Antanovich* focused solely on the issue whether a claimant could stack basic loss benefits payable under section 202 of the No-fault Act. In its *Antanovich* opinion, the Supreme Court did not address the question whether post-mortem work loss benefits should be paid in a lump sum or in monthly accruements since that particular question was not raised before it on appeal. *Id.* 507 Pa. at 71 n. 3, 488 A.2d at 572 n. 3. Lump sum payments of work loss benefits were endorsed by the Superior Court in other opinions filed after its decision in *Antanovich, e.g., Fox v. State Farm Mutual Automobile Insurance Co.,* 322 Pa.Super. 96, 469 A.2d 199 (1983); *Kintz v. Nationwide Mutual Insurance Co.,* 323 Pa.Super. 3, 469 A.2d 1131 (1983), and in *Urland v. State Farm Mutual Automobile Insurance Co.,* 324 Pa.Super. 241, 471 A.2d 554 (1984), which was filed after the Pennsylvania Supreme Court's decision in *Kamperis.* We note that the issue of lump sum or monthly accrued payments was not directly before the Supreme Court in *Kamperis.*

versed, and the case is remanded to the court of common pleas for a determination of the amount of survivor's benefits payable and the interest due thereon. In all other respects, the trial court's order is affirmed. Jurisdiction is relinquished.