592 A.2d 735

**Anna M. ARNOLD, Individually and as Administratrix of the Estate of Mitchell R. Carion, Appellant,**

**v.**

**James LOGUE, Jr., Erie Insurance Group/Erie Insurance Exchange/Erie Insurance Company, Merritt I. Edner Agency and Merritt L. Edner, and Employers Mutual Casualty Company.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1990.

Filed June 12, 1991.

John G. Achille, Brookville, for appellant.

John C. Dennison, Brookville, for Merritt, appellee.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a judgment denying appellant's claims for work loss, survivors, and medical benefits, plus interest, costs and attorney's fees under her no-fault automobile insurance policy against appellees, Merritt L. Edner

and Merritt I. Edner Agency. Appellant contends that the trial court made numerous errors in interpreting the no-fault insurance law; thereby, denying her recovery. Based upon our review of the record in this case and the applicable law, we must affirm the trial court.

On April 4, 1977, appellant engaged appellee, Merritt L. Edner and the Merritt I. Edner Agency, to purchase no-fault automobile insurance for a 1968 Pontiac. The Edner Agency is a general insurance agency with authority from several insurance companies to issue insurance coverage binders. As the conversation between the two parties revealed that appellant could not be issued a binder with any of the insurance companies that appellee represented, appellant's insurance application was forwarded to the Pennsylvania Insurance Commissioner for assignment in the assigned risk pool. As appellant's application was assigned to the Employers Mutual Casualty Company, she was issued a no-fault automobile insurance policy covering her 1968 Pontiac.

At the time her policy was issued, appellant's household members were her three children, Mitchell, Wendy, and Terry, and her mother, Nellie Ross. On April 30, 1977, appellant's sixteen-year-old son, Mitchell, was killed in an automobile accident while driving appellant's automobile insured by Employers. Soon after the accident, appellant contacted the Edner Agency concerning Mitchell's death. Merritt Edner notified Employers of the fatal accident, and in July of 1977, Employers paid a death benefit of $1,500.00 for Mitchell's funeral expenses.

In the later part of 1982, appellant became aware through a newspaper article that a class action suit had been filed seeking to recover work loss benefits from a fatal accident involving an unemployed minor child in the policy-holder's household. Appellant contacted the Edner Agency to obtain Employers' address and wrote a letter to Employers on February 1, 1983, requesting additional benefits. As appellant's request was denied, she issued a writ of summons on April 29, 1983, and filed her complaint on June 27, 1983.

The original-named defendants in appellant's suit included appellees along with James Logue, Jr., and Erie Insurance Company. Employers Mutual Casualty Company was granted summary judgment and all claims against Logue and Erie Insurance Company were settled as of March, 1986.[1]

Following a non-jury trial, the trial court, on March 24, 1988, found in favor of appellees, Merritt L. Edner and the Merritt I. Edner Agency. Appellant filed post-trial motions which were denied on February 15, 1990. A notice of appeal to this court was filed on March 13, 1990. Appellant praeciped to have the judgment entered in this matter on April 19, 1990.[2]

Appellant raises the following issues for our review:

I. Did the trial court abuse its discretion in finding that Appellees Edner and Edner Agency did not breach a duty of care owed Appellant either in tort or contract by incorrectly informing Appellant that no benefits were due except the $1,500 death benefit when in fact other no-fault benefits were due, including $15,000 wage loss and survivors benefits?

II. Did the trial court err in finding that a general insurance agent has no contractual or fiduciary duty to the insured for whom he writes a policy, and no agency relationship exists between the insurance agent and the insured?

III. Did the trial court err in finding that the *Dercoli* case did not apply to an insurance agency/agent that misrepresents whether additional benefits were due?

IV. Did the trial court err in finding that the deceased would not contribute to his mother's support where the Appellant need only show probable contribution, but in fact offered evidence that the decedent had contributed

1. Terry L. Carion, one of appellant's children and members of her household, owned a vehicle insured by Erie Insurance Company. Erie paid a $15,000.00 wage loss benefit under Carion's policy for Mitchell's death.

2. Pursuant to Pa.R.A.P. 905(a), appellant's appeal was perfected as of that date.

by working on the farm and had recently quit school and started full-time employment in order to be able to contribute to the household.

V.   Did the trial court err in failing to allow Appellant to recover damages for lost wages, interest at 18%, attorney fees, and survivor benefits, which were clearly due under the No–Fault Act, or improperly allow Appellees a credit for payment for settlement of the claim against Defendant Erie?

VI.   Did the court too narrowly construe case/statutory law denying No–Fault benefits setting up an impenetrable barrier?

■■■   Appellant alleges that the trial court erred in failing to impose a duty upon appellee, an insurance agency which represented many insurance companies, to inform her of all claims relative to her no-fault policy.   Appellant contends that the duty discussed by the supreme court in *Dercoli v. Pennsylvania National Mutual Insurance*, 520 Pa. 471, 554 A.2d 906 (1989), of "good faith" and "fair dealing" between an insurer and its insured is applicable to the instant case concerning a general insurance agency and its client.   The trial court held that the *Dercoli* duty is not applicable in this instance due to the fact that appellee is a general insurance agency and not appellant's insurer.

Recently, in *Miller v. Keystone Insurance Company*, 402 Pa.Super. 213, 586 A.2d 936 (1991), we addressed the duty of good faith enunciated in *Dercoli*.   In *Miller*, we stated that the duty was premised on three factors.   They are: "(1) the insurer had assumed the responsibility for processing its insured's claims;   (2) the insurer knew that the insured was relying exclusively on its advice and counsel; and, (3) the insurer had knowledge regarding an additional claim for benefits to which Mrs. Dercoli was entitled and it failed to disclose such information."   *Id.*, 586 A.2d at 941.

■■■   Our review of the record and applicable case law reveals that appellant's claim for work loss benefits was not cognizable under Pennsylvania law at the time appellant

made her claim under her no-fault policy; therefore, the third factor as set forth in *Miller* cannot be satisfied and we decline to address the matter concerning the applicability of the *Dercoli* duty upon a general insurance agency in dealing with its clientele.[3]

Instantly, the fatal accident involving appellant's son occurred on April 30, 1977. Soon thereafter, appellant notified appellee, Merritt Edner, of Mitchell's death and presented appellee with the funeral bill. Appellee completed the necessary form, "Auto Liability Accident Notice," which notified the insurer of claims having been presented on policies issued through a general agent's office. A death benefit of $1,500 was paid to appellant by her insurer in July of 1977 for Mitchell's funeral expenses. At the time that appellant presented her claim for benefits under her no-fault policy, spring of 1977, a work loss benefit for an estate of a deceased victim was not cognizable in Pennsylvania. Therefore, there can be no duty imposed on an insurer or its agent to so inform.

We find this case factually very similar to *Gabovitz v. State Auto Ins. Assoc.*, 362 Pa.Super. 17, 523 A.2d 403 (1987). *Gabovitz* involved a case where an executrix of an estate commenced a class action suit on behalf of her deceased husband's estate, as well as on behalf of others similarly situated, in order to recover post-mortem work loss benefits under the Pennsylvania No–Fault Act. Gabovitz had recovered funeral and survivor's benefits in April of 1976, two months following her husband's fatal accident. Gabovitz made a claim for payment of work loss benefits in November of 1980. As her claim was denied, Gabovitz filed suit to recover the work loss benefits in December of 1980. Upon affirming the trial court's decision in favor of the insurer, we held that the insurer did not have an affirmative duty to inform Gabovitz, at the time she filed her original claim for benefits under the no-fault act, of all possible

---

**3.** As we are affirming the trial court in this case, we are mindful of the fact that we may do so on a basis other than that used by the trial court as long as the result is correct. *McKenna v. Mooney*, 388 Pa.Super. 298, 565 A.2d 495 (1989).

benefits, especially those which were not recognized as of yet. *Gabovitz, supra.*[4]

In *Miller,* we agreed with the *Gabovitz* panel that in 1976, when the Gabovitz estate's claim was processed by the insurer, there existed no recognized recovery for post-mortem work loss benefits. We stated that in 1976, without more, both "the insured and the insurer had equal information regarding whether post-mortem work loss benefits someday would be recoverable by an estate." *Miller v. Keystone Insurance Company, supra.,* 402 Pa.Super. at ——, 586 A.2d at 943. Although we decline to address whether appellees were acting as agents of the insurer in this instance, in *Miller* we recognized that an insurer or its agent is not required to predict future changes in the law or future entitlements to benefits. *Id.* Consequently, as appellant's claim for post-mortem work loss benefits was not cognizable in 1977, when Mrs. Arnold had her claim processed by appellees and paid by Employers, we affirm the trial court in regard to all claims, i.e., interest, costs, and attorney's fees, arising from the post-mortem work loss issue on appeal.

■ Appellant also argues that the trial court erred in failing to impose a duty upon appellees, Merritt Edner and the Edner Agency, to inform appellant of her survivor's benefits under her no-fault policy. Due to our belief that appellant is not eligible for survivor's benefits, we decline to discuss whether appellees could be held responsible for failing to inform appellant of this particular benefit.

The No–Fault Act had defined survivor and survivor's loss.

---

4. As discussed in *Miller,* the supreme court in September of 1980, by way of *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), determined that a surviving spouse could recover work loss benefits on behalf of his or her deceased husband or wife. In July of 1982, this court decided *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982), and determined that an estate of a deceased victim could recover work loss benefits under the No–Fault Act. This court characterized its holding in *Freeze* as a logical extension of *Heffner,* but it was not until *Heffner* was decided that insurers were on notice of the potential recovery by an estate for work loss benefits. *See Miller v. Keystone Insurance Co., supra.*

"Survivor" means:

(A) spouse; or

(B) child, parent, brother, sister or relative dependent upon the deceased for support.

"Survivor's loss" means the:

(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and

(B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury,

reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury.

40 P.S. § 1009.103 (repealed). Also, the Act provided a $5,000 limit for survivor's benefits. 40 P.S. § 1009.202(d) (repealed). Although appellant is the deceased's mother, she also needed to prove that she was dependent upon the deceased for support in order to qualify as a "survivor" under the Act. We have defined "dependent" "to include any spouse or relative to whose support a decedent made substantial contributions—whether of financial resources or uncompensated services, 40 P.S. § 1009.103—such that without the decedent's contributions, the claimant is unable to continue the lifestyle that was made possible through the decedent's contributions to the claimant's support." *Rago v. State Farm Automobile Insurance Company*, 355 Pa.Super. 207, 212, 513 A.2d 391, 394 (1986).

Appellant contends that she has met her burden of proof in regard to survivor's benefits in that the deceased performed chores on the farm and that, had he been given the opportunity, the deceased's earnings from his full-time position would have been used to defer the household expenses.

In light of the *Rago* analysis, the trial court found the following:

> ... the deceased was only 16 years of age. He had obtained a job and worked just two days before the accident that took his life. Prior to that, while he was still a student he had worked part time but spent his earnings from that part time work on his own personal needs. There is no evidence whatsoever that any of the deceased's earnings were ever used to support the plaintiff nor is there any evidence to support a finding that the plaintiff incurred any expenses to obtain ordinary and necessary services which the deceased would have performed but for his death.

Trial court opinion, 3/24/88 at 3. Although in *Rago* we held that the parent need not be supported solely by the deceased in order to qualify as a survivor, the facts in *Rago* were much more favorable to establish dependency than they are presently. In *Rago,* the court found the following:

> Christine Anne Sciambra was 20 years old at the time of her death. Prior to her death, Christine shared a modest two-bedroom apartment with her mother. Both women worked at Dali-fresh: Christine worked as a · seasoner; her mother worked as a packer. Their net weekly incomes were $125 and $103, respectively. With the exception of approximately $20 per week that Christine kept for her own clothes, cosmetics, entertainment, etc., both mother and daughter contributed their entire paychecks to pay for household expenses. The total annual income which they jointly contributed to the household was $10,-800. The estimated yearly expenses of the joint household were $11,020.

*Rago, supra.,* 355 Pa.Super. at 210, 513 A.2d at 392.

Given these facts, we held that:

> [n]either Ms. Sciambra nor Christine was the sole support or the main support of the other. Instead, the two were interdependent in that each supported and was supported by the other. The facts of record show that Christine's assistance and financial support provided her mother with

some of the ordinary necessities for her mother's modest and reasonable living standard consistent with persons in her socioeconomic position. The record also evidences that Ms. Sciambra was unable to maintain her modest lifestyle in the absence of Christine's support. Therefore, Ms. Sciambra was dependent on her daughter Christine for purposes of entitlement to survivor's benefits under the No-fault Act, and we accordingly reverse the trial court's order and remand for a determination of proper benefits.

*Id.*, 513 A.2d at 394 (citations omitted). Our review of the instant record does not evidence such an interdependence between appellant and the deceased, nor does it reveal that appellant incurred expenses to obtain services that the deceased would have performed but for his death. Accordingly, we affirm the trial court in regard to appellant's claim for survivor's benefits.

Based upon the foregoing, appellant's ineligibility for work loss and survivor's benefits, appellant's claims for interest, attorney's fees, and costs are dismissed.[5]

Judgment affirmed.

---

**5.** Appellant contends in her brief that she was denied work loss benefits due to her recovery from Erie Insurance for said benefits. Not only does the record not support appellant's contention, but based on our decision today, appellant's allegation is specious at best.